```
CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
440 N. First Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Creditor Campeau Goodsell Smith
```

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 14-52449 |
| SILICON VALLEY TELECOM EXCHANGE, LLC, | CHAPTER 11 |
| Debtor. | Date: August 4, 2014<br>Time: 11:00 a.m.<br>Court: Hon. Charles Novack<br>280 S. First Street Court #3070<br>San Jose, CA 95113 |

### CGS REPLY ON MOTION TO APPOINT CHAPTER 11 TRUSTEE

CGS hereby replies to debtor SVTX's opposition to CGS' motion to appoint a Chapter 11 trustee, and represents as follows:

In late 2001, debtor SVTX (with other Rubio entities) filed a Chapter 11 petition; in August 2007, debtor SVTX confirmed a joint reorganization Plan. Debtor SVTX has been in continual default under the confirmed Plan since September 2007, having brushed off its Plan obligations until compelled by creditors (starting in October 2009 and continuing to present), with a prior Court finding "flagrant" violations.

This dog has reached the end of his tether.

For the reasons set forth in CGS Motion and hereinafter, a trustee should be appointed.

## LEGAL ARGUMENT

As set forth in CGS' Motion, sec. 1112(b) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ***unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.***" Sec. 1112(b)(4) defines the term "cause" to include: (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; (E) failure to comply with an order of the court; (M) inability to effectuate substantial consummation of a confirmed plan; (N) material default by the debtor with respect to a confirmed plan; (O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan. "Cause is a flexible standard, subject to the Court's discretion, and does not necessarily involve one or all of those factors set forth in section 1112(b)(4)." *In re Prods. Int'l Co.*, 395 B.R. 101, 107 (Bkrtcy.D.Ariz 2008) (items listed in sec. 1112(b)(4) are not exclusive); also, *Labankoff v. U.S. Trustee (In re Labankoff)*, 2010 Bankr. LEXIS 5083 at 11 (BAP 9th Cir. 2010).

In its Motion, CGS has demonstrated that the Rubios have failed their fiduciary duties to SVTX creditors by failing to collect and pay rents resulting in SJUSD commencing lease eviction proceedings, by diverting creditor funds in violation of the confirmed Plan, by failing to comply with the March 2013 Order, and in various other respects. Debtor SVTX has not refuted these incontestible facts – it has merely offered feeble excuses.

To avoid these hard facts, debtor SVTX has posited its own "issues to be decided" – which are not the "causes" provided under sec. 1112(b)(4) and which fail to address the correct legal standards for DIP fiduciary responsibilities set forth in CGS' Motion.

A.  **CGS Response to Debtor "Statement of Issues to be Decided"**

In its opposition, SVTX concludes that there are 6 debtor-biased issues to be decided – while CGS disagrees that the issues phrased by SVTX are the sole issues which SVTX must address, CGS responds directly to those 6 issues below:

1.  **CGS Has Made a Prima Facie Showing for Appointing a Trustee**

Ab initio, debtor SVTX argues that sec. 1112(b) provides no statutory authority for this Court to appoint a Chapter 11 trustee; debtor apparently has failed to read the statute, which states specifically that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause ***unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.***" No separate motion under sec. 1104 is required. For this operating entity, appointing a trustee is in creditors best interests.

Without unnecessarily repeating the facts and arguments provided in its Motion, CGS has demonstrated that Rubios have failed their fiduciary duties to SVTX creditors by failing to collect and pay rents resulting in SJUSD commencing lease eviction proceedings, by diverting creditor funds in violation of the confirmed Plan, by failing to comply with the March 2013 Order, and in various other respects. Debtor SVTX has not refuted these incontestible facts.

CGS has made a prima facie showing necessary for appointing a trustee in this case.

2.  **The March 2013 Order is Evidence That This Court Must Consider**

Next, debtor SVTX argues that the March 2013 Order prevents this Court from appointing a Chapter 11 trustee by virtue of collateral estoppel. No -- it prevents re-litigation of the facts considered in that matter – by either party.

Judge Weissbrodt found that that "*Debtor's violation of the Plan was flagrant. The evidence unequivocally shows that Debtor completely disregarded its obligations under the Plan.*

*After the Plan was confirmed, Debtor assigned all financial tasks to Ms. Rubio, who never read the Plan fully and simply glanced at it. Debtor also never shared a copy of the Plan with Debtor's accountants. In short, Debtor failed to take Debtor's Plan obligations seriously."* (Memorandum Decision, p. 27). Debtor SVTX cannot contest this finding; CGS does not.

The prior Court did not appoint a trustee as requested by creditors **at that time**[1] however *"in light of Debtor's past Plan violations, caused largely by Mr. Rubio's lack of diligence in complying with the Plan and Ms. Rubio's lack of accounting sophistication and failure to understand the Plan's requirements, a prospective order compelling Debtor to make Plan payments is appropriate ... To aid consummation of the Plan, the Court orders that Debtor shall employ, at Debtor's expense, a certified public accountant to ensure that Debtor's business operations and expenditures comply with the Plan and with the July 23, 2010 Order. Such accountant shall prepare and certify all of the quarterly reports required by the July 23, 2010 Order, as being in compliance with the Plan and such Order, and shall make and certify the required disclosures which the Debtor stipulated to make. The accountant shall also audit Debtor's balance sheet and the accounting tasks performed by Ms. Rubio or anyone else on behalf of Debtor, and shall certify that accounting and distributions are, in the accountant's professional opinion, in compliance with the Plan and the July 23, 2010 Order. If, in the accountant's judgment, the accounting and other financial work performed by Debtor (either through Ms. Rubio or anyone else) is unreliable, the accountant shall prepare a*

---

[1] "The Court has not ruled out the possibility that a receiver or trustee may be appointed. See, *Silverman v. Tracar S.A. (In re American Preferred Prescription, Inc.)*, 255 F.3d 87 (2nd Cir. 2001) (the bankruptcy court appointed a Chapter 11 trustee post-confirmation; the district court found this was improper because the plan did not allow such appointment, but the appeals court reversed the district court's decision on other grounds). The Court also has not ruled out the possibility of converting this case to a Chapter 7 if Debtor should fail to comply with this Order or with the July 23, 2010 Order, of it Debtor should fail to make any required Plan payments in the future." (Memorandum Decision, p. 32).

*writtenfexplanation as to what is unreliable and why it is unreliable, shall provide the written explanation to Debtor and any creditors who requested written reports under the terms of the July 23, 2010 Order, and shall do the calculations him or herself. Debtor shall cooperate fully and at all times with the accountant(s)."* (Memorandum Decision, p. 31-32). Debtor SVTX has never provided any such verification to CGS or other creditors. As set forth in the Supplemental Goodsell Declaration, on/about July 11, 2014, Goodsell spoke with SVTX CPA Laurie Orlando to ascertain if her firm had reviewed and approved all payments to creditors since March 2013; she advised that she was unaware if her firm had done so, but would inquire within her firm and respond to me – as of this date, she has not responded. On July 22, 2014, Goodsell received an email from Karen Rubio with an "Independent Account's [sic] Report" without any personal signature dated July 18, 2014 (after CGS' Motion was filed and after the July 10, 2014 Plan payment deadline) stating that the accounting firm had confirmed that SVTX (only) had distributed $-0- for 3Q14 under the Plan. Goodsell had never received any similar report for any prior period as required by the March 2013 Order, and requested that such reports be sent to him, if they existed. Karen Rubio agreed to do so, but Goodsell has received no response from her. A copy of the emails and the Independent Account's Report is attached to the Supplemental Goodsell Declaration as Exhibit B. A copy of the SVTIX Balance Sheet which CGS received via email from Karen Rubio on July 10, 2014 is attached to the Supplemental Goodsell Declaration as Exhibit C. *While the Independent Account's Report states that the SVTIX cash balance on June 30, 2014 was $-0-, the SVTX Balance Sheet shows the cash balance to be $17.93; the Independent Account's Report is wrong.*

While the prior Court did not ***at that time*** appoint a trustee, the prior Court ***explicitly stated that it was not ruling out that option*** should circumstances present themselves.

Those circumstances exist.

The prior Court was unaware that SVTX's only current tenants are Rubio-owned SVTIX and RAIX, who together occupy about 10,000 sf of the 97,000 facility – ergo, the subject property is about 90% vacant, and has been so vacant since Verio and NTTA left in 2012.

The prior Court was unaware of RAIX existence, or that RAIX has paid Rubios at least $90,000 in compensation since 2011 (which could have paid RAIX rent to SVTX), or of Rubios' contention that RAIX is not bound by the confirmed Plan, and any compensation paid by RAIX to Rubios is not subject to the absolute cap of $15,000/mo imposed by the confirmed Plan.

The prior Court was unaware that SVTIX and RAIX together owe $198,930 to SVTX, which remains unpaid; this sum equates to about 4 months delinquent rent. (The rent arrearages due to SJUSD – the reason for SVTX's current Chapter 11 petition – total $200,878).

The prior Court was unaware that in October 2013, SJUSD filed an unlawful detainer action to dispossess SVTX from the subject property; SJUSD alleged that SVTX had failed to pay rent since June 2013.

The prior Court was unaware that SVTX has violated its March 2013 Order.

The prior Court specifically reserved the possibility of converting SVTX to a Chapter 7 proceeding or appointing a trustee/receiver if Plan payments were not made, or if SVTX violated its March 2103 Order. Debtor SVTX has not made any Plan payments during 2014, and it has not complied with the March 2013 Order.

Nothing prevents this Court from relying upon the findings made in the March 2013 Order, and subsequent events, in appointing a Chapter 11 trustee in this new proceeding.

### 3. Fraud/Dishonesty is NOT a Prerequisite to Appointing a Trustee

While debtor's fraud or dishonesty, if found, is a strong determinant for appointing a trustee (or case conversion), no such finding is a necessary prerequisite for a trustee. Whether

diverting SVTX tenants to RAIX and taking compensation not allowed under the confirmed Plan constitutes fraud or dishonesty is not a necessary finding for this Court to make at this time.

Appointing a Chapter 11 trustee does allow the Court (and collaterally debtor SVTX creditors) to investigate and evaluate the circumstances of potential insider self-dealing. The trustee may retain Rubio's services – or not. The trustee may find wrong-doing – or not.

Having made a prima facie case on undisputed facts, creditors should not be obligated to undertake years of litigation to prove what is obvious: Rubios are not proper fiduciaries here.

### 4. Rubio's Conflict of Interest Mandates Appointing a Trustee

As debtor-in-possession, Rubio has a fiduciary duty as an officer of the court to act in the best interest of debtor SVTX – not for the benefit of RAIX, SVTIX or Rubio himself. In the instant matter, Rubio has competing loyalties, where he will be inclined to act to preserve rights and revenues of non-debtors RAIX, SVTIX or Rubio – to the detriment of debtor SVTIX. He has already admitted that RAIX was formed in 2011 to get around the Plan limitations on using creditor monies for project development; the prior Court found that Rubio had diverted at least $200,000 away from SVTX/SVTIX creditors (and was unaware of the RAIX diversions). Once Rubio has taken these actions (as with the spent $200,000), it is hard to get the cat back in the box. Consequently, based on prior malprisons, courts appoint trustees to void future ones.

Rubio's existing conflicts of interest, combined with his past self-dealing, justify appointing a trustee in this case to prevent anticipatible damage to this estate and its creditors.

Debtor SVTX cites *In re Klein/Ray Broadcasting*, 109 B.R. 509 (9th Cir. BAP 1987) for the proposition that to "merely raise a question as to a possible conflict of interest" is insufficient to support appointing a trustee. *Klein/Ray* is inapposite to debtor's argument. In *Klein/Ray*, by the time that the creditors' motion was heard, debtor was not operational, with all of the debtor's operating assets have been sold and reduced to cash or notes receivable, pending

the outcome of the state court litigation will affect ultimate shareholder claims. The only evidence submitted before the trial court was an attorney declaration which, according to the trial court, contained no evidence of any conduct on the part of the appellees sufficient to constitute "cause." The *Klein/Ray* trial court determined that the creditors would do a better job at protecting their own interests than would a trustee, and denied the motion without prejudice, and specifically stated that the court would "look with favor upon a motion for the appointment of a trustee" if the court received "any indication" that the current management was not fulfilling its responsibilities. The appellate court affirmed.

In contrast, debtor SVTX is an operating entity – in fact, if it ceases operations (or fails to pay rent to SJUSD), it will be valueless. Every day, Rubios make operating decisions that impact the viability of this business; past decisions (like not paying rent) have been disastrous. Even now, Rubio declares that he is creating a lease between Rubio-owned SVTX and Rubio-owned RAIX to undertake substantial improvements to previously-occupied NTTA space (on terms not disclosed). Using RAIX as a foil, Rubios have made their actions completely opaque to SVTX creditors; appointing a Chapter 11 trustee will shine a light in presently dark corners.

CGS does not "speculate" as to "cause" for appointing a trustee – the evidence is already legally present via the March 2013 Order, Rubio's testimony at the July 2nd meeting of creditors, and communications between Goodsell and SVTX accountants. There is no dispute that SVTX has failed to make Plan payments. There is no dispute that SVTX has failed to comply with the March 2013 Order. This is not "speculation" but cold hard reality.

### 5. The Court May Consider Risks to Creditors in Appointing a Trustee

After points on a line are established, it is not improper to interpolate between them or to extrapolate beyond them to define the character of the line. If, as the prior Court has already ruled in its March 2013 Order, Rubios have "flagrantly violated" the confirmed Plan and have

"failed to take Plan obligations seriously," the Court may conclude Rubios will do so again. Secretly creating RAIX to avoid limitations under the confirmed Plan is one concrete example. Failing to make SJUSD rent payments and thereby jeopardizing all creditors interests is another. Signing both sides of a new lease agreement with RAIX and SVTX, while RAIX is in default of its existing lease obligations to SVTX is yet another.

In *Klein/Ray*, the trial court concluded that there could be no harm to creditors where the debtor had no on-going operations, had liquidated its assets, and was awaiting the outcome of state court litigation before distributing the net proceeds held. SVTX is not *Klein/Ray*.

The risks to creditors, given the Rubios known previous self-dealing and on-going obscurity of financial dealings among Rubio-owned-and-controlled enterprises, begs a trustee.

### 6. Continuing SVTX Losses and Inability to Pay Rent Mandate a Trustee

Finally, debtor argues that the Rubios have not mismanaged SVTX nor caused continuing losses; well, if not them, then who? It is undisputed that SVTX sufffered continuing losses under Rubios management, such that its only material asset (SJUSD lease) was defaulted and its eviction was imminent. It is undisputed that Rubio -- "a licensed commercial real estate broker who specialized in commercial leasing in the San Jose area prior to operating SVTX" -- has failed to find a replacement tenant for Enron since Enron left in 2002, and has failed to find a replacement tenant for NTTA and Verio since they left in 2012. (The Verio contamination excuse is a red herring -- the contamination is in the parking outside and SVTX presents no evidence that any prospective tenant declined to rent interior space -- because SVTX has added "rack tenants" throughout that time frame). Any business losses are Rubios responsibility only.

Debtor then claims that there is a new tenant "Chaego" that is ready and willing to lease 16,000 sf (or more) "despite the fact that there is no closure letter from the County of Santa Clara regarding the clean up of the diesel fuel spill". (Opp., p 9). (How does Rubio square that

last statement with "Rubio's efforts to lease the Verio and NTT America data center space was initially hampered by the diesel fuel spill ..."?) . So who is Chaego and what are its terms?

CGS has conducted an internet inquiry into Chaego LLC, using the limited (non-existent) information provided in debtor's Opposition and the supporting Rubio Declaration. Attached to the Supplemental Goodsell Declaration are print-outs of websites accessed.

Per California Secretary of State website, a name search for Chaego turns up nothing; a name search for Chaego LLC turns up a defunct entity named Chaego Investments LLC.

Per Wyoming Secretary of State website, a name search for Chaego LLC shows an entity formed in February 2011 using an Oakland California address – which is "Inactive - Administratively Dissolved (Tax)" as of April 11, 2014. Further searches show a registered address, principal address, and mailing address at 21960 Gillette Drive, Los Gatos, CA. (This is a residential address, with two other companies using the same address: Jerry Garrett Enterprises and Accesstamp). The company's single principal is Julia Greenberg (who is not an attorney in either California or Wyoming), who has incorporated or organized over 50 entities (primarily in Wyoming and New Mexico). If this is new tenant "Chaego," it appears to be sketchy on paper.

Debtor SVTX has provided no information that would lead to any other conclusion.

Concluding, debtor SVTX argues that "CGS has not presented any facts that RAIX is doing anything improper or harming SVTX in any way. To the contrary, RAIX is paying SVTX rent – rent that SVTX would not receive but for the existence of RAIX." (Opp, p. 10). Wow. Per Schedules and Rubio, RAIX has failed to pay SVTX rent which lead to this new bankruptcy, and RAIX has paid $90,000 to Rubios despite Plan provisions limiting Rubio compensation to $15,000/mo. Those are facts demonstrating harm to SVTX. There is no evidence that RAIX' sub-sub-tenants would not gladly be SVTX tenants – same space, same power, possibly lesser rental rates (since RAIX is obviously raking off at least $90,000). There is no evidence that new

tenant Chaego would not gladly be an SVTX tenant – especially if Chaego is funding its own tenant improvements and RAIX is just passing Chaego rents through to SVTX.

Appointing a Chapter 11 trustee would allow independent evaluation of this tenant.

**B.      Time is of the Essence in Appointing a Chapter 11 Trustee**

This Chapter 11 case was filed 60 days ago; there are 60 days remaining before the unassumed SJUSD lease expires. If the leasehold expires, the estate will be valueless. There is no indication from anything filed in this case (which is virtually nothing), that debtor SVTX has or will have the ability to assume the SJUSD lease. Per the June 2014 MOR, debtor SVTX had $53 on hand in its bank account on June 30, 2014. Per the 1st quarter SVTIX financial report, non-debtor SVTIX has $17.93 on hand in its bank account on June 30, 2014. (CGS has no idea what RAIX has in its bank account, because RAIX does not report to anyone but Rubio).

Appointment of a trustee need not be adverse to Rubios' interests; a trustee may conclude that Chaego is the engine to pull debtor SVTX out of bankruptcy. But if a Chapter 11 trustee is to have any influence on cascading events, he/she must be appointed now – when there is still time to act – for the benefit of debtor SVTX' creditors.

### CONCLUSION

For the reasons set forth above, it is in the best interests of creditors that a Chapter 11 trustee be appointed in this case.

DATED: July 29, 2014                    CAMPEAU GOODSELL SMITH


                                        By     /s/ Scott L. Goodsell
                                               Scott L. Goodsell
                                               Attorneys for Creditor CGS