Michael A. Isaacs, State Bar No. 99782
Jennifer C. Hayes, State Bar No. 197252
McKENNA LONG & ALDRIDGE LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California 94105
Telephone:    415.267.4000
Facsimile:    415.267.4198
misaacs@mckennalong.com
jhayes@mckennalong.com

Attorneys for Janina M. Hoskins,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>SILICON VALLEY TELECOM EXCHANGE, LLC,<br>250 Stockton Ave.<br>San Jose, CA 95126<br>SANTA CLARA-CA<br>Tax ID / EIN: 77-0510895,<br><br>Debtor. | Case No: 14-52449 MEH<br>Chapter 11<br>M. Elaine Hammond<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION: (1) TO ASSUME AND ASSIGN NONRESIDENTIAL REAL PROPERTY LEASE; AND (2) TO SELL ESTATE'S RIGHT, TITLE, AND INTEREST IN PROPERTY, FREE AND CLEAR OF INTERESTS**<br><br>**REQUEST FOR FINDINGS UNDER 11 U.S.C. § 363(m)**<br><br>Date: January 29, 2015<br>Time: 10:00 a.m.<br>Ctrm: United States Courthouse<br>        280 South First Street, Room 3070<br>        San Jose, California 95113 |

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | GENERAL BACKGROUND FACTS | 1 |
| II. | TRUSTEE'S EFFORTS TO MAXIMIZE THE VALUE OF THE LEASE AND RELATED PROPERTY | 3 |
| III. | TRUSTEE'S AGREEMENT WITH CERULEAN | 3 |
| IV. | TERMS OF LEASE MODIFICATION | 5 |
| V. | REQUEST FOR AUTHORITY TO SELL, ASSUME, AND ASSIGN | 6 |
| VI. | REQUEST FOR AUTHORITY TO SELL FREE AND CLEAR OF SPECIFIED INTERESTS | 8 |
| VII. | OVERBID PROCEDURE | 10 |
| VIII. | REQUEST FOR FINDINGS UNDER 11 U.S.C. §§ 363 | 11 |
| IX. | CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page

**Cases**

*Agarwal v. Pomona Valley Med. Grp., Inc.*
  (*In re Pomona Valley Med. Grp, Inc.*),
  476 F.3d 665, 670 (9th Cir. 2007) ............................................................................7

*Androse Assocs. of Allaire, LLC v. Great Atlantic & Pacific Tea Co.*
  (*In re Great Atlantic & Pacific Tea Co.*),
  472 B.R. 666, 672 (S.D.N.Y. 2012). .........................................................................7

*In re Bethlehem Steel Corp.*,
  291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) ...............................................................7

*In re MF Global, Inc.*,
  478 B.R. 611, 616 (Bankr. S.D.N.Y. 2012) ............................................................6, 7

*FutureSource LLC v. Reuters Ltd.*,
  312 F.3d 281 (7th Cir. 2002),
  *cert. denied*, 538 U.S. 962 (2003) ...........................................................................10

**Codes / Statutes**

11 U.S.C. § 363(f)(2) and (f)(4) ...................................................................................8, 9, 10

11 U.S.C. § 363(b) ......................................................................................................6, 9, 10

11 U.S.C. § 363(m) ..........................................................................................................8, 11

11 U.S.C. § 365(a) ................................................................................................................7

11 U.S.C. § 365(b)(1) ........................................................................................................7, 8

**Rules**

Rule 62(a) of the Federal Rules of Civil Procedure ..........................................................12

Bankruptcy Rule 6004(h) ...................................................................................................12

Bankruptcy Rule 6006(d) ...................................................................................................12

**Other**

3 Collier on Bankruptcy ¶365.03[2], p. 365-27
  (Alan N. Resnick & Henry J. Sommer, eds. 16th Ed.) ............................................7

Janina M. Hoskins, Chapter 11 Trustee of the estate of the above Debtor, files this Memorandum in support of her Motion: (1) to Assume and Assign Nonresidential Real Property Lease; and (2) to Sell Estate's Right, Title, and Interest in Property Free and Clear of Interests and in support thereof states as follows:

## I.
## GENERAL BACKGROUND FACTS

1. On June 5, 2014, Silicon Valley Telecom Exchange, LLC (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code.

2. On August 14, 2014, Janina M. Hoskins was appointed as Chapter 11 Trustee (the "Trustee") for cause, following a motion filed by creditor Campeau Goodsell Smith ("CGS"), which was Debtor's bankruptcy counsel in its previous chapter 11 bankruptcy case, filed in 2001 (the "First Bankruptcy Case") (Declaration of Janina M. Hoskins in Support of Motion Motion: (1) to Assume and Assign Nonresidential Real Property Lease; and (2) to Sell Estate's Right, Title, and Interest in Property Free and Clear of Interests ("Hoskins Declaration"), ¶2; Dkt. #18). The Motion to Appoint Trustee alleged that the Debtor's principals, Fred and Karen Rubio (together, the "Rubios"), failed to pay funds to creditors as required by the Debtor's plan of reorganization confirmed in the First Bankruptcy Case. (*Id.*).

3. The primary asset of the Debtor's bankruptcy estate is a 25-year lease by and between the Debtor and the San Jose Unified School District (the "Landlord") dated February 18, 1999 (the "Lease") of nonresidential real property and buildings located at 250 Stockton Avenue, San Jose, California (the "Premises"). (Hoskins Declaration, ¶3, Exhibits A-C). The Lease was originally signed by Rubio & Associates, Inc. and was assigned to the Debtor on or about July 14, 1999. (*Id.*) The Lease runs 25 years from the May 1, 1999 commencement date, with an extension of up to five years at the Landlord's discretion. (*Id.*). Section 17.3 of the Lease requires the District's prior written consent for any sublease of the Premises. (*Id.*, Exhibit A; Declaration of Steve Adamo in Support of Motion: (1) to Assume and Assign Nonresidential Real Property Lease; and (2) to Sell Estate's Right, Title, and Interest in Property Free and Clear of Interests ("Adamo Declaration"), ¶3).

1

4. RAIX, LLC ("RAIX") and Silicon Valley Telecom & Internet Exchange, LLC ("SVTIX") are insiders of the Debtor. (Hoskins Declaration, ¶4). The Trustee is informed and believes that the Rubios manage RAIX and SVTIX and are the principal members of RAIX and SVTIX. (*Id.*)

5. The Debtor purports to sublease the Premises to RAIX and SVTIX. (Hoskins Declaration, ¶5, Exhibits D, E). The District has never provided approval, in writing or otherwise, for a sublease of the Premises to Silicon Valley Telecom & Internet Exchange, LLC, RAIX, LLC, or to any other individual or entity. (Adamo Declaration, ¶4; Hoskins Declaration, ¶6).

6. The Trustee is informed and believes that the Rubios, via RAIX and SVTIX, generate income from the Premises by providing colocation and related services. (Hoskins Declaration, ¶7).

7. The Trustee is informed and believes that, prepetition and postpetition, the Rubios have rented out parking spaces at the Premises, including venue parking for evening concerts and events at the San Jose Convention Center; however, the income from this "side business" has not been turned over to the Debtor or to the Trustee. (Hoskins Declaration, ¶8).

8. The Trustee has worked diligently trying to gather money that could be used to pay ongoing expenses of administration, including rent and utilities. (Hoskins Declaration, ¶¶9, 10). However, the biggest problem in this case has been cash issues. (*Id.*) Despite substantial sums being collected by SVTIX and RAIX from their customers, SVTIX and RAIX have not been paying the Debtor sufficient sums for the Debtor to meet its substantial monthly operating expenses. (*Id.*) Pursuant to the subleases between the Debtor and SVTIX, and the Debtor and RAIX, the affiliates owe Debtor a fixed monthly rent payment. (*Id.*) However, even that payment has been reduced, based upon what the Rubios call "Fair Market Value." (*Id.*)

9. The Trustee is informed and believes that, notwithstanding the precarious financial condition of the Debtor, the Rubios disbursed $94,000 to themselves in 2014 as follows: (a) on October 20, 2014, at a time when PG&E was threatening to disconnect power to the Premises, Fred Rubio took a draw from RAIX in the sum of $22,000; (b) from March 31, 2014 to October 27 2014, the Rubios took partner draws from RAIX totaling $35,000 (not including the $22,000

partner draw Fred Rubio took on October 20th); and (c) from May 8, 2014 to October 20, 2014, SVTIX paid fees to the Rubios totaling $37,000. (Hoskins Declaration, ¶10).

The Trustee is informed and believes that the Lease is substantially more valuable if the Debtor is operating and the power is on. (Hoskins Declaration, ¶11). Due to the lack of income turned over by RAIX and SVTIX to pay standard operating expenses, time is of the essence in obtaining approval of a sale, assumption, and assignment. (Hoskins Declaration, ¶11).

## II.
## TRUSTEE'S EFFORTS TO MAXIMIZE THE VALUE OF THE LEASE AND RELATED PROPERTY

10. In her efforts to maximize the value of the Lease since her appointment in August 2014, the Trustee had multiple communications with various interested assignees of the Lease. (Hoskins Declaration, ¶12). Cerulean Global Services, LLC ("Cerulean") and several individuals expressed interest in an assumption and assignment of the entire Lease. (*Id.*) One of the brokers with whom the Trustee spoke made a verbal offer to purchase the estate's interest in the Lease; however, the offer was conditioned upon purchase of the Premises, and the District did not agree to sell the Premises. (*Id.*) The Trustee also received an offer from Chaego, a company that proposed current occupancy of part of the premises and to lease additional space in the future. (Hoskins Declaration, ¶13).

## III.
## TRUSTEE'S AGREEMENT WITH CERULEAN

11. The best offer the Trustee received was from Cerulean. (Hoskins Declaration, ¶20). The Trustee is in the process of finalizing a sale agreement with Cerulean that provides, in summary, as follows, subject to Bankruptcy Court approval. (Hoskins Declaration, ¶14). Cerulean will pay $620,000 (the "Purchase Price") at closing. (*Id.*) In addition, Cerulean will pay an additional $7,500 (the "Additional Seller Payment Amount") in six months after closing, upon satisfaction of several conditions identified in the Asset Purchase Agreement. (*Id.*) Specifically, under the Asset Purchase Agreement, Cerulean shall pay the Purchase Price as follows. First, Cerulean shall make a wire payment to the Trustee for the cure amount owing to the Landlord, and

Trustee shall pay the cure amount to the Landlord on the later of (i) the closing of the Asset Purchase Agreement; or (ii) three (3) business days after the execution of the Assumption, Assignment, and Amendment of Lease. In addition, Cerulean shall make a wire payment to the Seller in an amount which is equal to the Purchase Price of $620,000 less the cure amount for the Lease, and less any prorations as set forth under section 10.1 of the Asset Purchase Agreement. (Hoskins Declaration, ¶14).

12. Conditions precedent to the assumption, assignment, and sale are identified in Article VIII of the sale agreement, and include that the Bankruptcy Court enters an order approving the sale that is acceptable to Cerulean in Cerulean's sole and absolute discretion by January 29, 2015 and that such order is not stayed. (Hoskins Declaration, ¶15). An additional condition precedent is that the sale is free and clear of the interests of RAIX, SVTIX, specified taxing authorities, and PG&E. (*Id.*)

13. In exchange for the Purchase Price, and subject to Bankruptcy Court approval, the estate will assume, assign, and sell the Lease to Cerulean, and the Trustee will sell the following additional property to Cerulean (collectively, the "Additional Property"): (a) the estate's $100,000 deposit with the District; (b) the accounts receivable owed to the estate by RAIX, SVTIX, Fred Rubio, Karen Rubio, Rubio Associates, Inc. or any Rubio Affiliate; (c) the estate's right, title, and interest in the tangible personal property as necessary for Cerulean's operations at the Premises; (d) the estate's non-privileged documents; (e) all permits held by the estate, if any, to the extent transferable; (f) all intellectual property, if any; (g) to the extent transferable, all rights of the estate, if any, under non-disclosure or confidentiality, non-compete, or non-solicitation agreements with employees and agents of Debtor or with third parties; (h) the estate's rights, if any, pursuant to warranties, representations, indemnification agreements, and guarantees made by suppliers, manufacturers and contractors, (i) the estate's goodwill and other intangible assets, if any, associated with the business and/or the purchased assets; (j) the estate's rights, claims, or causes of action of the estate, relating to assets, properties, business, or operations of the estate or the purchased Assets; provided, however, that such claims do not include any claims of the estate against RAIX, SVTIX, Fred Rubio, Karen Rubio, Rubio & Associates, Inc., and/or any other

4

Rubio affiliate; (k) the estate's rights, if any, to the telephone and facsimile numbers and e-mail addresses used by the estate, as well as rights to receive mail and other communications addressed to Seller; (l) other property and assets owned by the estate and pertaining to or used or useful in the conduct of the business or the ownership of the purchased assets, (m) any rebates received at any time from PG&E in connection with or related to (i) services provided to the Business or Buyer by Pacific Gas and Electric Company following the Closing Date; (ii) any alteration or improvement of the energy efficiency of the Premises by Buyer; or (iii) any other action taken by Buyer, or any funds expended by Buyer, that qualify for a rebate from Pacific Gas and Electric Company; and (n) other assets of the estate not otherwise described above but that are not expressly designated in the sale agreement as "Excluded Assets." (Hoskins Declaration, ¶16).

14. The Asset Purchase Agreement provides for a break-up fee to Cerulean if an overbidder succeeds in becoming the assignee under the Lease. (Hoskins Declaration, ¶17). The agreed-upon break-up fee (subject to Court approval) is the lesser of 4% of the purchase price or the reasonable fees and expenses incurred by Cerulean in connection with the transaction. (*Id.*)

## IV.
## TERMS OF LEASE MODIFICATION

15. The Trustee is informed and believes that the Landlord and Cerulean have agreed upon a modification to the Lease (the "Lease Modification"), which provides, *inter alia*, for Cerulean to lease the Premises for a full ten years, with an option for Cerulean to request an additional five-year extension, provided that Cerulean is not in default under the Lease. (Hoskins Declaration, ¶18). The Trustee is further informed and believes that the Lease Modification: (a) fixes rent at $51,932.25 per month during the first year of the term, with monthly base rent to increase three percent per year; (b) requires Cerulean to increase the deposit by $55,796.75 (*i.e.* from $100,000 to $155,796.75), to be increased during the fifth year of the term so that the security deposit is equal to three months' based rent at the then-current base rent; and (c) permits the Landlord at its discretion to use up to ten parking spaces as reserved parking spaces at the Premise, and to request to use a portion of the Premises at a fair market rental value rate for co-locating purposes during the lease term and any option term. (*Id.*, ¶18). The Lease Modification

provides for a cure amount of $281,877.91. (*Id.*)

16. The Trustee is informed and believes that the Lease Modification is conditioned upon execution of a guaranty by Cerulean's parent company, pursuant to which the parent company absolutely and unconditionally guarantees timely payments to the District under the Lease up to a maximum amount of $200,000. (Hoskins Declaration, ¶19).

17. The proposed sale of the estate's right, title, and interest in the Lease and the Additional Property and the proposed assumption and assignment of the Lease are on an as-is, where-is, and with all faults basis. The Trustee disclaims any representations or warranties, expressed or implied, in connection with the proposed sale, assumption, and assignment.

18. Sale of the estate's right, title, and interest in the Lease and the Additional Property and assumption/assignment of the Lease are subject to Bankruptcy Court approval and higher and better bids.

19. The Trustee retains the right to agree to negotiate changes to the APA that are consistent with the terms set forth herein, and to execute the APA, without further Court order.

20. The Trustee will request that the Order authorizing her to sell, assume, and assign and take other actions is effective immediately upon entry and that no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, Bankruptcy Rules 6004(h), 6006(d), or otherwise, shall apply with respect to the Order.

21. The Trustee proposes that any disputes with respect to the sale, assumption, or assignment will be resolved by the United States Bankruptcy Court in its sole and complete discretion, and that the United States Bankruptcy Court will reserve jurisdiction over the Order approving this motion, including but not limited to enforcement and interpretation of the Order.

## V.
## REQUEST FOR AUTHORITY TO SELL, ASSUME, AND ASSIGN

22. 11 U.S.C. § 363(b) provides in relevant part that the "trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ." A trustee may use estate property outside the ordinary course of business as long as the trustee articulates a sound business reason. *E.g., In re MF Global, Inc.*, 478 B.R. 611, 616

6

(Bankr. S.D.N.Y. 2012).

23. 11 U.S.C. §365(a) provides in relevant part that "the trustee, subject to the court's approval, may assume or reject any . . . unexpired lease of the debtor." The right to assume an unexpired lease is a fundamental component of the bankruptcy process as it provides a mechanism to preserve valuable lease assets. *In re Bethlehem Steel Corp.*, 291 B.R. 260, 264 (Bankr. S.D.N.Y. 2003) ("The purpose of section 365(a) is to allow the debtor to benefit from those contracts that are profitable and reject those which are unprofitable, thereby maximizing the value of the debtor's estate."). The business judgment test applies to the Trustee's decision to assume a lease. *Androse Assocs. of Allaire, LLCv. Great Atlantic & Pacific Tea Co. (In re Great Atlantic & Pacific Tea Co.)*, 472 B.R. 666, 672 (S.D.N.Y. 2012). Under the business judgment rule, the Court should presume the [trustee] acted prudently, on an informed basis, in good faith, and in the honest belief that the action was taken in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Med. Grp., Inc. (In re Pomona Valley Med. Grp, Inc.)*, 476 F.3d 665, 670 (9th Cir. 2007) (lease rejection); 3 Collier on Bankruptcy ¶365.03[2], p. 365-27 (Alan N. Resnick & Henry J. Sommer, eds. 16th Ed.). The Court should approve decisions made by the Trustee in her business judgment unless it finds that the Trustee's decision "is so manifestly unreasonable that it could not be based on sound judgment, but only on bad faith, whim, or caprice." *Pomona Valley*, 475 F.3d at 670.

24. In her business judgment, based on her efforts to market the Lease, and in comparing the offers she received, the Trustee concluded that the consideration being offered by Cerulean to the estate for the assumption, assignment, and sale of the estate's right, title, and interest in the Lease and the Additional Property is the best offer the estate has received. (Hoskins Declaration ¶20).

25. Section 365(b)(1) provides in relevant part as follows:

> [i]f there has been a default in an. . . unexpired lease of the debtor, the trustee may not assume such . . . lease unless, at the time of assumption of such . . .lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default other than a default that is a breach of a provision relating to the satisfaction of any provision (other than a

7

penalty rate or penalty provision) relating to a default arising from any failure to perform nonmonetary obligations under an unexpired lease of real property, if it is impossible for the trustee to cure such default by performing nonmonetary acts at and after the time of assumption, except that if such default arises from a failure to operate in accordance with a nonresidential real property lease, then such default shall be cured by performance at and after the time of assumption in accordance with such lease, and pecuniary losses resulting from such default shall be compensated in accordance with the provisions of this paragraph;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such . . .lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such . . . lease.

26. The Trustee believes that the cure amount does not exceed $281,878, which the Trustee agrees to pay promptly upon entry of a final order granting this Motion.

27. The Trustee seeks to satisfy subsections 363(m) by filing and/or by working with Cerulean to file, appropriate declaration(s).

## VI.
## REQUEST FOR AUTHORITY TO SELL FREE AND CLEAR OF SPECIFIED INTERESTS

28. Pursuant to 11 U.S.C. § 363(f)(2) and (f)(4), the Chapter 11 Trustee seeks authority to assume and assign the estate's right, title, and interest in the Lease and to sell the estate's right, title, and interest in the Lease and the Additional Property free and clear of the interests of the entities and individuals specifically identified in the caption of the Motion, whose interests are more specifically described as follows:

    a. All interests of RAIX in the Lease and/or the Additional Property, including but not limited to the sublease dated May 30, 2011 and any amendments or modifications thereto.

    b. All interests of SVTIX in the Lease and/or the Additional Property, including but not limited to the sublease dated February 14, 2012 and any amendments or modifications thereto.

    c. All interests of Fred Rubio (including any alias or dba used by Fred Rubio) in the Lease and/or the Additional Property.

    d. All interests of Karen Rubio (including any alias or dba used by Karen Rubio) in the Lease and/or the Additional Property.

8

e. All interests of Rubio & Associates, Inc. in the Lease and/or the Additional Property and or any other Rubio-controlled entity.

f. All interests of the Internal Revenue Service in the Lease and/or the Additional Property, including but not limited to Proof of Claim No. 1 filed on June 16, 2014 for unassessed 2014 taxes in the sum of $100.

g. All interests of the County of Santa Clara Office of the Tax Collector in the Lease and/or the Additional Property, including but not limited to Proof of Claim No. 5 filed on September 12, 2014 as a priority tax claim in the sum of $105,562.99.

h. All interests of the Franchise Tax Board in the Lease and/or the Additional Property, if any.

j. All interests of the Employment Development Department in the Lease and/or the Additional Property, if any.

j. All interest of Pacific Gas Electric Company in the Lease and/or the Additional Property, if any.

29. *Interests in Bona Fide Dispute*. The Trustee may sell property under section 363(b) free and clear of any interest in such property if such interest is in *bona fide* dispute. 11 U.S.C. § 363(f)(4). The Trustee contends that interests in the Lease held by the following persons are in *bona fide* dispute: (a) RAIX and SVTIX, including the subleases between the Debtor and RAIX and between the Debtor and SVTIX, because (i) the subleases were never approved by the District nor has the District otherwise consented to RAIX or SVTIX owning any other possessory interest in the Premises; (ii) even assuming that such subleases were valid, RAIX and SVTIX are in payment default to the Debtor under the terms of the subleases; and (b) the Rubios, Rubio & Associates, Inc., and any entity controlled by the Rubios, because the District has not consented to these persons having any possessory interest in the Premises. (Hoskins Declaration, ¶21). The Trustee is informed and believes that the following interests in the Additional Property are in *bona fide* dispute: the interests RAIX, SVTIX, Fred Rubio, Karen Rubio, Rubio & Associates, Inc., any entity controlled by the Rubios (collectively, the "Insiders") (to the extent that the Insiders claim any interest in the Additional Property), because, among other things, that the Insiders have breached their fiduciary duties to the Debtor and have misappropriated the Debtor's corporate opportunities and revenues, diverting them to create value for the Insiders at the expense of the Debtor. (*Id.*, ¶22, Exhibit F). For example, Judge Weissbrodt determined that, when Fred and

9

Karen Rubio were managing the Debtor, after the Debtor confirmed its plan of reorganization, Debtor flagrantly violated its plan and failed to make required distributions under the plan. (*Id.*)

30. *Consent*. The Trustee may sell property under section 363(b) free and clear of any interest in such property if such entity consents. 11 U.S.C. § 363(f)(2); *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281 (7th Cir. 2002), *cert. denied*, 538 U.S. 962 (2003) (failure to object constitutes consent when notice is adequate). The Trustee does not anticipate that any of the taxing authorities will object to the relief sought in the Motion, specifically: the Internal Revenue Service, the County of Santa Clara Office of the Tax Collector, the Franchise Tax Board, the Employment Development Department, and PG&E, because the Trustee is unaware of any lien or other interest the taxing authorities or PG&E may have in the Lease or the Additional Property and, if there is an interest in the Lease or Additional Property, it will attach to the proceeds of sale to the same extent, validity, and priority that it attaches to the Lease and the Property. (Hoskins Declaration, ¶23).

# VII.
# OVERBID PROCEDURE

31. The proposed sale of the estate's right, title, and interest in the Lease and the Property and the assumption and assignment of the Lease are subject to overbid on the following terms and conditions:

   a. The first overbid must be in an amount of at least $651,000 (*i.e.*, $620,000 plus an overbid of 5%, which is $31,000).

   b. An overbid must not contain loan contingencies, inspection contingencies, or other contingencies.

   c. Each bidder must provide $100,000 to the Trustee in cash, cashier's check, certified check or other funds satisfactory to the Trustee so that it is received by the Trustee <u>no later than 3:00 p.m. on January 23, 2015</u>. Checks should be payable to "Estate of Silicon Valley Telecom Exchange, LLC" and should be sent/delivered to the Trustee's counsel, Jennifer C. Hayes at McKenna Long & Aldridge LLP, Spear Tower, One Market Plaza, 24th Floor, San Francisco, California 94105 ("MLA San Francisco Office"). The overbid should contain the e-mail address

at which the overbidder would like to receive notices regarding the auction.

      d.      If the Trustee receives a timely, qualifying overbid, then the Trustee and/or her counsel will hold an auction, which may be an open auction or a sealed-bid auction, on January 27, 2015 at 10:00 a.m. at the MLA San Francisco Office or at such other date and time as specified on no less than 48-hours' e-mail notice to Cerulean's counsel and to anyone who has submitted a qualifying overbid.

      e.      The Trustee reserves the right, in her sole discretion, to refuse bids which do not, in her sole opinion, conform with the terms of the proposed sale, assumption, and assignment, to modify those terms and conditions, or to continue the sale from time to time. The Trustee, in her sole discretion, will determine the highest or best bid.

      f.      The Trustee may accept a backup offer at the auction.

## VIII.
## REQUEST FOR FINDINGS UNDER 11 U.S.C. §§ 363

32.      11 U.S.C. § 363(m) provides as follows:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

33.      The proposed Order provides as follows regarding 11 U.S.C. § 363(m) "Buyer is approved as a buyer in good faith in accordance with Section 363(m) of the Bankruptcy Code, and Buyer shall be entitled to all protections of Section 363(m) of the Bankruptcy Code. (Motion, Exhibit 1).

34.      Subject to appropriate declarations to be filed to support the ordering provisions requested by Cerulean under 11 U.S.C. § 363(m), the Trustee respectfully requests that the order contain the requested provisions under these subsections of section 363.

## IX.
## CONCLUSION

WHEREFORE, pursuant to 11 U.S.C. §§ 363 and 365, the Trustee respectfully requests

11

that the Court enter an order granting the Motion substantially in the form as the order attached as Exhibit 1 to the Motion. The Trustee further requests that the order to assume, assign, and sell be effective immediately upon entry and provide that no automatic stay of execution, pursuant to Rule 62(a) of the Federal Rules of Civil Procedure, Bankruptcy Rules 6004(h), 6006(d), or otherwise, shall apply with respect to the order.

DATED: January 9, 2014

Respectfully submitted,

McKENNA LONG & ALDRIDGE LLP

By: /s/Jennifer C. Hayes, Esq., CSBN 197252
Jennifer C. Hayes
Attorneys for Janina M. Hoskins,
Chapter 11 Trustee

USW 804831514.3