MICHAEL A. ISAACS (SBN 99782)
McKENNA LONG & ALDRIDGE LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California 94105
Telephone: 415.267.4000
Facsimile: 415.267.4198
misaacs@mckennalong.com

Attorneys for JANINA M. HOSKINS,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>SILICON VALLEY<br>TELECOM EXCHANGE, LLC,<br>250 Stockton Ave.<br>San Jose, CA 95126<br>SANTA CLARA-CA<br>Tax ID / EIN: 77-0510895,<br><br>    Debtor. | Case No: 14-52449 MEH<br>Chapter 11<br><br>**TRUSTEE'S THIRD CHAPTER 11 STATUS CONFERENCE STATEMENT**<br><br>Date: January 29, 2015<br>Time: 10:30 a.m.<br>Place: 280 South First Street<br>    Courtroom 3070<br>    Hon. M. Elaine Hammond<br>    San Jose, CA 95113 |

Janina M. Hoskins, Chapter 11 Trustee of the estate of the above-named Debtor (the "Trustee") files this Third Chapter 11 Status Conference Statement and represents as follows.

I.

**TRUSTEE'S APPOINTMENT**

On June 5, 2014, Silicon Valley Telecom Exchange, LLC ("Debtor") filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code.

This is the second filing for relief under the Bankruptcy Code by the Debtor. The Debtor confirmed a plan of reorganization in 2007.

On July 8, 2014, the Debtor's former counsel filed its GCS Motion to Appoint Chapter 11 Trustee as Docket Entry No. 18.

On August 5, 2014, the Court entered its Order for Appointment of Chapter 11 Trustee as Docket Entry No. 35. On August 14, 2014, the Court confirmed the selection of Janina M. Hoskins as Trustee by way of its. Order Approving Appointment of Chapter 11 Trustee as Docket Entry No. 40.

## II.

## BACKGROUND

The Debtor filed for relief under Chapter 11 of the Bankruptcy Code on June 5, 2014. The Debtor owns one real property asset, a lease for an approximately 94,000 square foot warehouse property and annex at 250 Stockton Avenue in San Jose, California 95126 (the "Lease" at the "Property"). The landlord of the Property is the San Jose Unified School District (the "District"). The Lease was the focal point of the Debtor's prior bankruptcy case filed on October 22, 2001. The Debtor, Silicon Valley Telecom & Internet Exchange, LLC ("SVTIX") and another entity, Rubio & Associates, Inc. ("R&A") all filed Chapter 11 cases on October 22, 2001. These cases were before the Hon. Arthur S. Weissbrodt. The Debtor eventually confirmed a plan of reorganization in August 2007, with the SVTIX case and the R&A cases being dismissed. The two other entities joined a proposed plan with the Debtor. They were jointly responsible for making payments under the plan.

Debtor's prior counsel, Campeau Goodsell Smith ("CGS") was one of the Debtor's largest creditors, owed over $400,000 by the Debtor. The Debtor defaulted on its plan. CGS filed a motion to compel in 2008. The Court did not issue a decision on the motion to compel until March 2013. That decision called for the appointment of an accountant and for certain reporting mechanisms to be put in place by the Reorganized Debtor.

The Debtor subsequently defaulted on its Lease with the District and, after an unlawful detainer action by the District, a second Chapter 11 was filed, i.e., the current case. The CGS motion to compel and subsequent contested hearings in this current bankruptcy case focused on the creation by the Debtor's principal(s), i.e., Fred D. Rubio and/or Karen Rubio (the "Rubios") of two entities, i.e., SVTIX and RAIX, LLC ("RAIX"). SVTIX and RAIX entered into leases with the Debtor and became sublessors. Based upon the Trustee's investigation, the monthly rent to be

2

paid to the Debtor by SVTIX was to be $45,000. (The Trustee believes it was originally $57,000 per month but later reduced.) The monthly rent to be paid to the Debtor by RAIX was to be approximately $15,000. RAIX and/or SVTIX have sub sub lessees or customers who sublease space from these entities. The amounts paid to the Debtor by RAIX and SVTIX were grossly inadequate to fund the expenses of the Property. According to the Debtor's Schedule B, RAIX and SVTIX collectively owe the Debtor $198,930 in rent. Therefore, not only are the monthly rent obligations by RAIX and SVTIX inadequate to cover expenses at the Property, these inadequate obligations were not met and funds were not paid to the Debtor. As of the Trustee's appointment, the Trustee determined that the Debtor was in arrears to the District for over $225,000. Now, with additional attorneys' fees incurred, expenses related to getting an environmental clearance at the Property and other matters, the Trustee believes that the approximate cure amount owed to the District is $288,000.

### III.

### TRUSTEE'S ACTIVITIES SINCE APPOINTMENT

On September 2, 2014, the Trustee filed her Trustee's Chapter 11 Status Conference Statement, Docket No. 49 ("First Report").

On November 3, 2014, the Trustee filed her Second Trustee's Chapter 11 Status Conference, Docket No. 73 ("Second Report").

As described in the First Report and the Second Report, the Trustee, her counsel and her accountants met with the Debtor's principals, the Rubios, very shortly after the Trustee was appointed. The Trustee gathered information, investigated matters and met with counsel for the largest creditor, i.e., the Debtor's former law firm and the major claimant in the Debtor's first Chapter 11 case. Considerable time was spent during the time period covered by the First and Second Reports to try to gather information to determine whether or not, at a minimum, the relationship with the District could be stabilized and the Property operated at a break-even basis.

Gathering specific information was difficult, in that, as the Court is aware from prior filings, the Debtor does not deal directly with the actual occupants of the Property. Rather, the Rubios have created and utilize two intermediaries: RAIX, LLC and SVTIX, LLC. Through those

entities, the Rubios have created sub sub leases and/or other arrangements with persons or companies they call their "customers." The customers pay "rent" to RAIX and SVTIX. Those entities then, in turn pay rent to the Debtor. Thus, since the amount of rent paid from RAIX and SVTIX was variable and seemingly inconsistent, the Trustee did not know the total revenues generated at the Property. The Trustee pushed repeatedly to gather this information; however, it was not voluntarily forthcoming. However, as indicated in the Second Report, prior to the hearing on the First Report, the Trustee gathered information from the Rubios indicating that, in "rough figures," the Property generated approximately $106,000 per month; however, expenses ran at approximately $120,000 per month.

As indicated in the status conference statement filed by the Debtor on July 3, 2014 as Docket No. 16, the Rubios believed that they had a prospective tenant that planned to operate a data center at the Property and wanted to utilize backup generators. Supposedly that entity, Chaego, was to pay roughly $28,000 per month in rent and purchase three generators for approximately $86,000. Thus, the Rubios apparently believed that this would solve the Debtor's cash problems. However, Chaego's position, as indicated in the Second Report, was quite different. Chaego took the position that it would not pay rent until it had a lease that was approved by the District: something that the Rubios did not obtain and something to which the District has not agreed.

During the time period covered by this Third Report, the Trustee, through counsel, issued a subpoena to the Rubios, requesting financial information concerning RAIX and SVTIX. The reason for this request was that if the Trustee was to find a prospective assignee and/or a buyer for the Debtor's assets, the Trustee needed to have information regarding the total revenues generated at the Property. Prospective buyers / assignees wanted to know the total expenses, including PG&E expenses, other utility expenses and issues all related to the overall ability of the Property to generate cash. As indicated, per the Rubios, on a best case basis (and per the Trustee's evaluation), the Property currently does not generate sufficient funds to pay its operating expenses and to pay the District its monthly rent obligation of approximately $52,000. When the Rubios refused to respond to the subpoena, Trustee's counsel filed the Chapter 11 Trustee's Motion to

Compel and for Contempt Sanctions on October 20, 2014 as Docket Entry No. 62 ("Motion to Compel"). On October 22, 2014, on shortened notice, the Court heard the Motion to Compel and issued a turnover order with certain protections in favor of RAIX and SVTIX. Currently, the Trustee is seeking a modification of that order to allow her to circulate a notice and motion to all occupants of the Property, including SVTIX and RAIX. That matter is still under submission.

## IV.
## ISSUES WITH THE DISTRICT

The Trustee and the District, through counsel, have had various contacts regarding the Lease, issues related to RAIX and SVTIX and the potential lease with Chaego. The Property has not generated enough income to pay all amounts owed to the District post-petition. The Rubios took the position that the Debtor did not have to pay June rent, since it attempted to file the Chapter 11 after the rent due date – which was not successful. The District took the position that it wanted June rent paid, i.e., at a minimum, the "stub rent" due from June 5, 2014 through June 30, 2014. Unfortunately, the Trustee was not able to generate funds sufficient to pay the roughly $45,000 owed to the District for the June post-petition rent. The Trustee, through counsel, negotiated with the District and was able to successfully obtain a Stipulation to Extend the Deadline to Assume and Assign or Reject the Non-Residential Real Property Lease for Premises Located at 250 Stockton Avenue, San Jose, California ("Stipulation"). The Stipulation was filed and an order entered. Thus, the Trustee then had until January 2, 2015 to assume or reject the Lease.

Because of ongoing negotiations with a potential assignee (explained below), the District has agreed to extend the time period under which the Lease of the Property may be assumed or rejected. The current deadline for that to occur is February 6, 2015.

## V.
## POTENTIAL ASSIGNEE AND BUYER

For a number of months, the Trustee has been negotiating with potential assignees for the Property. The Trustee has negotiated with various parties, including with the Rubios. The Trustee has gathered information, met with parties and met with one party and representatives from the

District, together with counsel for the District. One particular party was quite interested in the Lease; however, as a condition precedent, they wanted to buy the Property: something that was too big of a hurdle to address with the District.

Currently, the Trustee is in the final stages of completing an Asset Purchase Agreement and assignment document whereby the estate's interest in the Lease of the Property will be assigned to a buyer, Cerulean, an entity that has met with the District. That process is ongoing and should be completed this week.

## VI.

## FINANCIAL REALITIES OF THE CASE

Unfortunately, as far as the Trustee can see, she has had difficulty explaining the financial realities of this case to the Rubios, i.e., the controllers of RAIX and SVTIX and to the principals of Chaego. Chaego wishes to occupy space at the Property, with plans to expand into more space at the Property soon thereafter, which could ultimately bring the total amount of rent to be paid by Chaego to $28,000 per month. Further, Chaego wishes to purchase three generators from the Debtor, as noted above. However, at present, the Trustee is barely able to keep the Debtor operational. The reality has been explained to the Rubios, but apparently, for reasons unexplained to the Trustee, the Rubios do not accept the precarious nature of this Chapter 11 case. The Rubios held fast in refusing to supply information to the Trustee that would enable the Trustee to get a complete picture of the revenues and the sources of those revenues each month. Rather, rent on subleases are paid to RAIX or to SVTIX and then forwarded to the Trustee. The Trustee is under the impression that now all monies are supposedly being forwarded to her by the Rubios; however, the Trustee is aware of exceptions. The Trustee believes that the District has been reasonable and rational with respect to its comments and concerns. The Trustee has dealt with three parties who have expressed interest in assuming the Lease, an alternative the Trustee considered since it is unlikely she can find other tenants for the Property so as to support it on a going forward basis. Unfortunately, the Rubios, notwithstanding the passage of many years, have not been able to gather an adequate number of tenants to satisfy ongoing obligations and to fund a Chapter 11 plan.

6

## VII.

## TRUSTEE'S RECOMMENDATION

The Trustee recommends that the Status Conference in this case be continued for 60 days. She recognizes that she will need to file a report under Bankruptcy Code Section 1106(a)(5).

DATED: Janaury 22, 2015        Respectfully submitted,

McKENNA LONG & ALDRIDGE LLP


By:     /s/Michael A. Isaacs, Esq., CSBN 99782
Michael A. Isaacs
Attorneys for JANINA M. HOSKINS,
Chapter 11 Trustee

USW 804844275.1