MICHAEL A. ISAACS, SBN 99782
  michael.isaacs@dentons.com
ANDREW S. AZARMI, SBN 241407
  andrew.azarmi@dentons.com
DENTONS US LLP
One Market Plaza, Spear Tower, 24th Floor
San Francisco, California 94105-1101
Telephone:   415.267.4000
Facsimile:   415.267.4198

Attorneys for JANINA M. HOSKINS,
Trustee in Bankruptcy

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| In re<br><br>SILICON VALLEY<br>TELECOM EXCHANGE, LLC,<br><br>Debtor. | Case No: 14-52449 MEH<br>Chapter 7<br><br>**DECLARATION OF JANINA M. HOSKINS IN SUPPORT OF MOTION TO COMPROMISE**<br><br>[No Hearing Requested] |

I, Janina M. Hoskins, declare as follows:

1.  I am the duly appointed and qualified Trustee of the estate of the above Debtor. This declaration is in support of my Motion to Compromise filed concurrently herewith.

2.  The testimony in this declaration is based on my personal knowledge and, if called upon to testify regarding such information, I could and would competently do so. References to "me" or "I" refer to me solely in my capacity as the Chapter 7 Trustee of the Silicon Valley Telecom Exchange, LLC bankruptcy estate.

3.  On June 5, 2014, Silicon Valley Telecom Exchange, LLC (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code. On August 14, 2014, I was appointed as Chapter 11 Trustee for cause, following a motion filed by a creditor. The primary asset of the Debtor's bankruptcy estate was a 25-year lease by and between the Debtor and the San Jose Unified School District ("Landlord") of non-residential real property and buildings located at 250 Stockton Avenue, San Jose, California (the "Premises"). I am informed and believe that the lease

1 | was originally signed and then subsequently assigned to the Debtor on or about July 14, 1999.

2 |       4.      On January 9, 2015, after extensive negotiations, I had my counsel file the Chapter 11 Trustee's Motion: (1) To Assume and Assign Nonresidential Real Property Lease; and (2) To Sell Estate's Right, Title, and Interest in Property, Free and Clear of Interests; Request For Findings Under 11 U.S.C. § 363(m) (the "Motion"). The Motion, together with supporting documents, indicated that Fred and Karen Rubio (the "Rubios") managed RAIX and SVTIX and are the principal members of those entities. The Debtor purported to sublease a portion of the Premises to RAIX and SVTIX. However, based on information gathered, I understand that the Landlord never provided approval in writing or otherwise for the subleases.

      5.      In my effort to maximize the value of the bankruptcy estate's interest in the Premises and property related thereto, I had multiple communications with various potential interested parties that wished to be an assignee of the lease on the Premises or acquire the Premises. Ultimately, I accepted a proposal whereby the sum of $620,000 (some adjustments were made) was to be paid under an Asset Purchase Agreement with Cerulean Global Services LLC ("Cerulean"). That transaction was consummated, subject to Court approval.

      6.      On February 2, 2015, the Court entered its Order Granting Motion (1) To Assume and Assign Nonresidential Real Property Lease; (2) To Sell Estate's Right, Title and Interest in Property Free and Clear of Interests, and (3) for Modification of Order (the "Assignment Order"). The Assignment Order approving the sale indicated that the sale was free and clear of all interests of RAIX, SVTIX and the Rubios.

      7.      By way of the proposed Settlement Agreement and General Release, a copy of which is annexed hereto as **Exhibit A** (the "Agreement") that I have entered into with the Rubios, RAIX and SVTIX, which includes general releases by all parties, I will pay the Rubios the sum of $35,000 in full and complete satisfaction of any claims asserted by the Rubios, SVTIX and/or RAIX against the bankruptcy estate of Silicon Valley Telecom Exchange, LLC, including the appeal of an order disallowing Claim Nos. 13 and 14 (the "Disallowance Order") and Claim No. 12 asserted by the Rubios.

///

104271025\V-1

8. I dispute the position asserted by the Rubios (Claim No. 12), SVTIX (Claim No. 13) and RAIX (Claim No. 14) (collectively, the "Claimants") that the Assignment Order provided for their interests to "attach" to the net proceeds of sale. I only sold my "right, title and interest." The Claimants argue that, while they did compromise at Court with Cerulean as to what would happen in the future regarding certain assets they owned, primarily related to customers of RAIX, no resolution was reached regarding property that was sold to Cerulean that belonged to the Claimants. However, I have been clear from the outset that I sold all of my right, title and interest in whatever assets the estate owned, and, also asserted possible offsets or claims against the Claimants.

9. I asserted that the activity at the Premises generated certain monies. However, the Rubios, either personally or through their entities, operated different businesses at the Premises and paid the Debtor less than the amount needed to cover the obligations to the Landlord and other expenses. Further, the Rubios generated other money, including renting spaces at a parking lot located at the Premises. Additionally, the Rubios caused the Debtor to incur obligations, including obligations to Pacific, Gas & Electric that went unpaid while, instead, Claimants paid themselves from the money generated by operations at the Premises.

10. I believe that my position regarding Claim Nos. 13 and 14 has been confirmed by the Bankruptcy Court, in that, while an appeal is pending, Claim Nos. 13 and 14 have been disallowed by the Bankruptcy Court. Issues related to Claim No. 12 are still pending.

11. As I understand it, the Rubios' position is straightforward. They have indicated that they only utilized a small percentage of the Premises, were unable to rent out the rest of the Premises on behalf of the Debtor, that RAIX and SVTIX paid fair market rental value and that monies that they received were based upon services rendered by those entities and not by the Debtor. They have indicated that the Debtor had no business, other than being a sublessor to RAIX, SVTIX and others. Further, the Rubios assert that they had a potential tenant / purchaser of equipment lined up. Had that transaction been completed, there would have been money available from future revenues from that tenant and from the tenant purchasing certain equipment that was property of the estate.

12. The Claimants collectively emphasize that the Assignment Order provided for any claims they had to reattach to the net proceeds of sale. Therefore, their position is that no one has paid them for their substantial interests, as evidenced by Claim Nos. 12, 13 and 14. They also assert that this is an "all or none" position, in that, if they prevail and obtain reversal of the Disallowance Order, then all money of this estate will be paid to them, pursuant to their claims.

13. I believe I will be successful in any appeal concerning the Disallowance Order. However, litigation is always uncertain and a very substantial factor in my decision to compromise with the Claimants is the expense and uncertainty of litigation. Not only would the estate continue to incur legal fees to prepare appellate briefs before the United States District Court, but, if affirmed, there is a probability that the case could be pursued to the Ninth Circuit Court of Appeal. It would become expensive to reach a resolution. Further, there are still open issues with respect to my objection to Claim No. 12. While the Rubios personally sought $199,520.10, I believe that, based upon comments at the time of the Court hearing, in effect, the actual risk to the estate is most likely approximately $36,000 in a Chapter 11 administrative claim.

14. Difficulty in collection is not a factor, in that, I am holding the money that would be utilized to pay the Claimants and no collection issues are involved.

15. The dispute involves three claims in the sums of $199,520.10, $1,073.978, and $68,702.78. These claims have all been asserted as Chapter 11 administrative claims; however, in effect, the Claimants are arguing that property that belonged to them was sold to Cerulean. Therefore, they assert, pursuant to orders entered by the Court, any "lien" or other ownership claim they had reattached to the net proceeds of sale which I now hold. As noted above, the Disallowance Order regarding two of the claims asserted is on appeal. The third claim, i.e., Claim No. 12, is still yet to be resolved, either by way of the current pending objection or by way of an evidentiary hearing. That issue has not yet been decided. Therefore, if an evidentiary hearing is necessary, my counsel will need to prepare for that hearing and possibly file documents and conduct a trial. Further, I have concluded that, while in dispute, the Rubios personally are asserting, at a minimum, a Chapter 11 claim for services rendered for the time period prior to my

104271025\V-1

4

Case: 14-52449    Doc# 187-1    Filed: 08/08/17    Entered: 08/08/17 11:20:33    Page 4 of 11

appointment, i.e., for two months, totaling approximately $36,000. In paying the Rubios $35,000, the risk of their success concerning Claim No. 12 and the appeal of the Disallowance Order is eliminated.

16. I believe that the settlement is in the best interest of creditors. It would remove what otherwise would be litigation expenses in excess of the settlement payment and remove the risk that the Claimants could be successful in their appeal and/or the Rubios could be successful in responding to the objection to their Claim No. 12. Even putting aside the appeal, if the Rubios were successful regarding Claim No. 12 and obtained a Chapter 11 claim for $36,000, they would receive a substantial payment on that sum. Therefore, paying $35,000 in full and complete satisfaction of any and all claims that the Claimants could assert, including the dismissal of the appeal, I believe is in the best interest of creditors. Further, I now plan to close this case and pay a distribution to Chapter 11 claimants.

I declare under penalty of perjury that the above statements are true and that if called as a witness I could and would testify to their truthfulness. This declaration is executed on the 8th day of August 2017 in Middletown, CA.

_____
Janina M. Hoskins

# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("Agreement") is entered into by and among Fred and Karen Rubio (the "Rubios"), RAIX, LLC ("RAIX"), Silicon Valley Telecom & Internet Exchange LLC ("SVTIX"), and Janina M. Hoskins in her capacity as Trustee in bankruptcy of the estate of Silicon Valley Telecom Exchange, LLC, Case No. 14-52449 MEH (the "Trustee").

## R E C I T A L S

A. On June 5, 2014, Silicon Valley Telecom Exchange, LLC (the "Debtor") filed for relief under Chapter 11 of the Bankruptcy Code.

B. On August 14, 2014, Janina M. Hoskins was appointed as Chapter 11 Trustee for cause, following a motion filed by a creditor.

C. The primary asset of the Debtor's bankruptcy estate was a 25-year lease by and between the Debtor and the San Jose Unified School District (the "Landlord") of non-residential real property and buildings located at 250 Stockton Avenue, San Jose, California (the "Premises").

D. On January 9, 2015, the Trustee filed her Chapter 11 Trustee's Motion: (1) To Assume and Assign Nonresidential Real Property Lease; and (2) To Sell Estate's Right, Title, and Interest in Property, Free and Clear of Interests; Request for Findings Under 11 U.S.C. § 363(m) (the "Motion").

E. The Motion, together with its supporting documents, indicated that the Rubios managed RAIX and SVTIX and are the principal members of those entities. The Debtor purported to sublease a portion of the Premises to RAIX and SVTIX.

F. On July 7, 2015, the Rubios, SVTIX and RAIX filed Claim Nos. 12, 13 and 14 in this case.

G. On March 10, 2017, the Trustee objected to Claim Nos. 12, 13 and 14.

H. On May 22, 2017, the Court entered its Order Sustaining Trustee's Objections To Claims (Claim 13 - Silicon Valley Telecom & Internet Exchange (SVTIX), LLC; and Claim 14 - RAIX, LLC) as Docket Entry No. 168 (the "Disallowance Order"). The Court indicated that a portion of the sums asserted in Claim No. 12 would be subject to a further hearing currently set for July 27, 2017.

I. On June 5, 2017, the United States District Court docketed its Notice of Appeal from Bankruptcy Court as Case No. 5:17-cv-03191-LHK, by which SVTIX and RAIX appealed the Disallowance Order.

J.      Over the course of this case, the Trustee has asserted that the Rubios, either personally or through their entities, operated businesses at the Debtor's Premises and either paid less than the amount needed to cover obligations to the Debtor's Landlord and other expenses, or failed to pay the Debtor for their use of the Premises, including parking revenues, or diverted funds for their own use and failed to reimburse Debtor's expenses, including payment of PG&E charges (collectively, the "Trustee Allegations"). Further, the Trustee asserted that the Rubios caused the Debtor to incur obligations that went unpaid while paying themselves from money generated by operations at the Premises.

**NOW, THEREFORE, IN CONSIDERATION OF THE RECITALS, MUTUAL COVENANTS AND CONDITIONS CONTAINED HEREIN, THE PARTIES AGREE AS FOLLOWS:**

1.      **Incorporation of Recitals.**  The Recitals set forth herein above are hereby referred to and incorporated herein and made a part of this Agreement.

2.      **Effective Date.**  This Agreement shall be effective on the date each party shall have duly executed and exchanged counterparts of this agreement by e-mail or fax transmission, subject only to Bankruptcy Court approval, as noted below.

3.      **Payment to the Rubios.**  In full and complete satisfaction of any claims asserted by the Rubios, SVTIX and/or RAIX against the bankruptcy estate of Silicon Valley Telecom Exchange, LLC, the Trustee agrees to pay the Rubios the sum of $35,000.

4.      **Court Approval.**  The Trustee will use her best efforts to seek Bankruptcy Court approval for this Agreement, including filing a motion to compromise, related notice and supporting declaration by the Trustee in support of this compromise.

5.      **Release by Trustee.**  Except for the duties and obligations of the parties set forth in this Agreement, the Trustee voluntarily releases and further discharges the Rubios, SVTIX and RAIX from and against any and all claims, allegations, demands, liabilities, actions, causes of actions, suits, obligations, losses, costs, expenses, debts, contracts, controversies, agreements, promises, damages, demands and liabilities whatsoever which the Trustee may have had, now has, or hereafter may have (whether known or unknown, fixed or contingent), including but not limited to the Trustee Allegations noted above.

6.      **Releases By Rubios, SVTIX and RAIX.**  Except for the duties and obligations set forth in this Agreement, the Rubios, SVTIX and RAIX voluntarily release and further discharge the Trustee and the bankruptcy estate from and against any and all claims, allegations, demands, liabilities, actions, causes of actions, suits, obligations, losses, costs, expenses, debts, contracts, controversies, agreements, promises, damages, demands and liabilities whatsoever which they may have had, now have, or hereafter may have (whether known or unknown, fixed or contingent) against the Trustee or the bankruptcy estate or any action taken or not taken by the Trustee.

7.      **Civil Code Section 1542.**  Except for the rights and obligations created under this Agreement, the parties hereto specifically waive the benefit of the provisions of Section 1542 of the Civil Code of the State of California which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

8. **General Release.** The releases set forth above are in full and final settlement of any and all claims and causes of action, whether the action, causes of action, claims, liabilities, losses, or demands are currently known, unknown, foreseen or unforeseen, and in any way related to the subject of this Agreement and the parties expressly waive the benefits of Section 1542. In connection with the waiver and relinquishment, each of the parties acknowledges that he, she, or it is aware that he, she, or it may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those which he, she or it knows or believes to be true, with respect to the matters released. Nevertheless, it is the intention of each party, through this Agreement, and with the advice of counsel, to fully, finally, and forever settle and release all such matters and all related claims which now exist, may exist, or may have existed between the parties related to the subject of this Agreement. In furtherance of this intention, the release given shall be and remain in effect as a full and complete release of these matters notwithstanding discovery or existence of any such additional or different claims or facts.

9. **Advice of Counsel.** The parties acknowledge that they have read and considered this Agreement carefully, that it was negotiated with their express approval, that they have discussed it with their attorneys, that they have been given a reasonable period of time to consider this Agreement before signing, that they fully understand the extent and impact of its provisions, and that they have executed it knowingly and voluntarily and without any coercion, undue influence, threat, or intimidation of any kind whatsoever.

10. **Entire Agreement.** No Party or any officer, agent, employee, representative, or attorney of or for any Party has made any statement or representation to any other Party regarding any fact relied upon in entering into this Agreement, and no Party relies upon any statement, representation, or promise of any other party or of any representative, agent, employee, officer, or attorney of any other Party, in executing this Agreement, or making the settlement provided for herein, except as expressly stated in this Agreement. This Agreement constitutes the entire agreement between the parties. This Agreement is intended to and shall be enforceable notwithstanding any change in law, any reinterpretation of the law, and if the any parties' interpretation of the law turns out to be incorrect.

11. **Restriction on Modifications.** It is expressly understood and agreed that this Agreement may not be altered, amended, modified, or otherwise changed by authorized representatives of the parties hereto, unless by a signed writing specifying that it amends this Agreement. The parties hereto agree and acknowledge that they will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character. This Agreement may not be altered, amended, or

3

104238660\V-4

**EXHIBIT A**

Case: 14-52449    Doc# 187-1    Filed: 08/08/17    Entered: 08/08/17 11:20:33    Page 8 of 11

extinguished, except by a writing executed by all of the parties to this Agreement (or their successors-in-interest) that expressly refers to this Agreement.

12. **Authority to Sign.** The parties warrant that the persons signing below are authorized to sign the Agreement on their behalf and on behalf of SVTIX and RAIX to the terms of the Agreement. The parties acknowledge that they have had an opportunity to consult with counsel regarding the terms of this Agreement.

13. **No Assignment.** Each party warrants and represents to the other parties that: (a) the releasing Party is the sole and lawful owner of all rights, title, and interest in the claims and liens which he, she, or it is releasing; and (b) the releasing party has not voluntarily, by operation of law or otherwise assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, any of the claims or liens which he, she, or it is releasing.

14. **Further Assurances**. The parties shall execute all such documents and take all such actions as may be necessary and reasonable to effect the consummation of this Agreement and the transactions contemplated by this Agreement. Each party agrees to take no action to hinder, delay, interfere with or frustrate the consummation of this Agreement or the transactions contemplated by this Agreement.

15. **Attorneys' Fees.** The parties agree to bear their own attorneys' fees and costs in connection with the investigation, prosecution, and resolution of claims referenced in the Recitals and that are resolved by this Agreement. However, in any dispute arising out of or in connection with the interpretation, performance, or enforcement of this Agreement, the non-prevailing party shall pay reasonable attorneys' fees and costs of the prevailing party.

16. **Severability.** Should any provision of this Agreement be held invalid or illegal, such invalidity or illegality shall not invalidate the whole of this Agreement or any other part of this Agreement, but rather the Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the parties shall be construed and enforced accordingly.

17. **Counterparts and Signatures**. The document may be executed in duplicate originals, each of which shall be equally admissible in evidence. The Agreement shall become effective when all parties have signed the same or separate copies thereof. A facsimile signature or signature transmitted by email in ".pdf" format shall be deemed to have the same effect as an original, "wet" signature.

18. **Successors and Assigns**. This Agreement is binding upon and shall inure to the benefit of the parties hereto, their respective agents, employees, representatives, officers, divisions, directors, subsidiaries, affiliates, assigns, heirs and successors, including any successor trustee appointed by the Court or otherwise.

19. **No Presumption Against Drafter**. For purposes of interpretation of the Agreement in the event of an ambiguity in any term or provision in the Agreement, no Party shall be deemed to have drafted this Agreement, but, instead, the Agreement shall be deemed to have been drafted by all parties hereto.

4

104238660\V-4

**EXHIBIT A**

Case: 14-52449   Doc# 187-1   Filed: 08/08/17   Entered: 08/08/17 11:20:33   Page 9 of 11

20. **Time.** Time is of the essence.

21. **Miscellaneous.** As used in this Agreement, the masculine, feminine, or neuter gender, or the singular or plural number, shall be deemed to include the other whenever the text so indicates. Captions and paragraph headings are inserted solely for convenience and shall not be deemed to restrict or limit the meaning of the text. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties.

22. **Choice of Law.** This Agreement shall be construed and enforced pursuant to the laws of the State of California and subject to the jurisdiction of the United States Bankruptcy Court, Northern District of California, Case No. 14-52449 MEH.

23. **Choice of Forum; Personal Jurisdiction.** The parties agree that any claim or dispute between them regarding the enforcement or interpretation of this Agreement must be resolved by the Bankruptcy Court.

DATED: August 7, 2017

_____
FRED RUBIO, individually and on behalf of SVTIX and RAIX

DATED: August 7, 2017

_____
KAREN RUBIO, individually

DATED: August 8, 2017

_____
JANINA M. HOSKINS,
Chapter 7 Trustee of the Bankruptcy Estate of Silicon Valley Telecom Exchange, LLC,
Case No. 14-52449 MEH

5

**EXHIBIT A**

**APPROVED**

DATED: August 7, 2017

LAW OFFICE OF MARC L. PINCKNEY

By: _____
MARC L. PINCKNEY
Attorneys for Fred and Karen Rubio

DATED: August 8, 2017

DENTONS US LLP

By: _____
MICHAEL A. ISAACS
Attorneys for JANINA M. HOSKINS,
Chapter 7 Trustee of the Bankruptcy Estate of
Silicon Valley Telecom Exchange, LLC,
Case No. 14-52449 MEH

6

**EXHIBIT A**

Case: 14-52449   Doc# 187-1   Filed: 08/08/17   Entered: 08/08/17 11:20:33   Page 11 of 11